```
                    United States District Court
                      District of Massachusetts
```

| | |
|---|---|
| **UNITED STATES OF AMERICA and COMMONWEALTH OF MASSACHUSETTS,** ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Civil Action No. 12-10847-NMG |
| **BAYER CROPSCIENCE and PHARMACIA CORPORATION,** ) ) ) ) | |
| Defendants. ) ) | |

## MEMORANDUM & ORDER

**GORTON, J.**

This dispute arises out of a consent decree between consolidated plaintiffs United States of America ("the federal government") and the Commonwealth of Massachusetts ("the Commonwealth"), on the one hand, and defendants Bayer CropScience, Inc. and Pharmacia Corporation, on the other, with respect to compensation for alleged damage to natural resources at a Superfund site in Massachusetts.

Pending before the Court is defendants' motion for further relief with respect to certain provisions in the consent decree. For the reasons that follow, the motion will be denied without prejudice.

-1-

I.  **Background and Procedural History**

   A.  **Industri-plex Superfund Site**

   Due to the release or threatened release of hazardous substances, the Industri-plex Superfund Site in Woburn, Massachusetts ("the Site") was placed on the National Priorities List in September, 1983 pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601, et seq. ("CERCLA").

   Defendants subsequently engaged with the federal government, acting on behalf of the United States Environmental Protection Agency ("EPA"), in a phased process of designing and implementing remedial action to clean up contamination at the Site.  The first phase focused on contaminated soils at the Site's Operable Unit 1 ("OU1").  In April, 1989, another Session of this Court approved a consent decree addressing a response action for OU1.

   B.  **OU2 Decree**

   The second phase of the remediation process, which is currently ongoing, is directed at contaminated groundwater, surface water and sediments at the Site's Operable Unit 2 ("OU2").  The scope of the remedial actions for OU2 is detailed in a January, 2006 Record of Decision issued by the EPA and the defendants' deliverable obligations are summarized in the November, 2007 Statement of Work ("SOW").  The SOW indicates

that the northern portion of the Halls Brook Holding Area Pond ("the pond"), or possibly the entire pond, will be used as a sediment retention area. It also requires

> [c]onstruction of compensatory wetlands for any loss of wetland functions and values associated with the selected remedy (e.g. northern portion of [the pond]...) nearby in the watershed.

In November, 2008, a second Session of this Court (not the OU1 court) approved a consent decree between the federal government, on behalf of the EPA, and the defendants regarding the design, implementation and reimbursement of costs for remedial action at OU2 ("the OU2 Decree"). The OU2 Decree incorporates the SOW, the Record of Decision and other documents detailing the remediation plan at OU2. Disputes with respect to the scope and nature of the remediation obligations must be resolved pursuant to the specific dispute resolution procedures indicated in the OU2 Decree.

    **C.    The Consent Decree**

Separately and independently of the OU1 and OU2 remediation processes, the United States Department of Interior and the National Oceanic and Atmospheric Administration (collectively "the trustees") initiated discussions with defendants in 2007 regarding natural resource damages at the Site.

In May, 2012, the federal government, acting on behalf of the trustees, commenced the present lawsuit against defendants alleging liability for natural resource damages pursuant to Section 107(a) of CERCLA. The Commonwealth filed a separate complaint against defendants on the same day seeking damages for injury to, destruction of or loss of natural resources under 1) CERCLA and 2) the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c. 21E. The two cases were consolidated the following day in this Session of the Court.

The parties subsequently agreed to settle the trustees' claims. That settlement was memorialized in a consent decree ("the Consent Decree") and approved by this Court in January, 2013. The Consent Decree provided compensation for Natural Resource Damages which are "any damages recoverable under Section 107(a)(4)(C) of CERCLA" for damage to natural resources resulting from the release of hazardous substances at the Site.

Specifically, the settlement took into account the implementation of remedial actions at OU2 and required defendants to pay $4.21 million for natural resources damages which the trustees were to use

> to pay for the costs of projects that restore, rehabilitate, replace and/or acquire the equivalent of the Nature Resources alleged to be injured as a result of releases or the threat of release of Waste Material at or from the Site.

The Consent Decree also contains covenants not to sue whereby plaintiffs agree not to take legal or administrative action against defendants for natural resource damages so long as defendants 1) provide satisfactory performance of their obligations under the Consent Decree and 2) are "in material compliance with their obligation to implement the OU2 Remedy." Moreover, notwithstanding any other provision in the Consent Decree, plaintiffs reserve all rights against defendants with respect to "liability for failure...to meet a requirement of" the OU2 Decree.

### D. Subsequent Events

Although the federal government in the OU2 Decree anticipated leaving only the northern portion of the pond unremediated, it subsequently determined that the whole pond would not be remediated and would instead serve entirely as a sediment retention area.

The federal government now demands that defendants mitigate for alleged lost wetland function and value of the pond by constructing "at least a 1:1 replacement of the entire area of [the pond] with newly created wetlands" ("the 1:1 Replacement"). In other words, defendants are being required to replicate the pond habitat or its functional equivalent in other locations in the watershed.

In February, 2015, defendants filed a motion for further relief requesting that this Court declare that 1) the injuries for which the federal government demands additional compensation are injuries already paid for pursuant to the Consent Decree, 2) additional penalties for those injuries would violate Section 107(f) of CERCLA and the covenant not to sue in the Consent Decree and 3) any claim for additional compensation for those damages is barred by the doctrine of res judicata.

## II.  Defendants' Motion for Further Relief

Section 107(f) of CERCLA prohibits double recovery for natural resource damages, including restoration and rehabilitation, "for the same release and natural resource." 42 U.S.C. § 9607(f)(1).

The federal government contends that its demand for the 1:1 Replacement cannot be double recovery barred by CERCLA because 1) defendants already agreed to satisfy that obligation in the OU2 Decree and 2) the Consent Decree expressly provides that defendants are subject to their commitment under the OU2 Decree. It advances a separate argument that the 1:1 Replacement does not constitute damages because the OU2 Decree provides only injunctive obligations.  The Commonwealth supplements that argument by emphasizing that state law imposes liability upon the defendants that is separate from their liability to the trustees under the Consent Decree.

Defendants deny that they are obligated to perform the 1:1 Replacement under the OU2 Decree.  They contend that the construction of a replacement pond is substantively equivalent to providing money damages but all damages with respect to the unremediated pond have already been paid under the Consent Decree.

Consent decrees "should be construed [] as contracts," United States v. ITT Cont'l Baking Co., 420 U.S. 223, 236 (1975), and under contract law, "[t]he plain language of the contract controls...unless that language is imprecise or equivocal." Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 7 (1st Cir. 2011).  The plain language of the Consent Decree indeed reserves all rights against defendants with respect to satisfying the OU2 Decree.  The covenant not to sue in the Consent Decree also expressly provides that it is conditioned upon defendants' full compliance with their prior obligations under the OU2 Decree.

The determination of whether defendants' are required to perform the 1:1 Replacement under the OU2 Decree is therefore central to this dispute.  Both parties agree, however, that the scope of defendants' obligations under the OU2 Decree is beyond the jurisdiction of this Session and disputes with respect thereto must be resolved pursuant to the dispute resolution procedures outlined in the OU2 Decree.

If the Judicial Officer with jurisdiction over the OU2 Decree concludes that defendants are contractually obligated to replicate the pond, defendants would find relief from such performance only by successfully convincing that Judicial Officer to amend the relevant provisions of the OU2 Decree.

On the other hand, if it is determined that defendants are not obligated to perform the 1:1 Replacement under the OU2 Decree, the dispute between the parties in this Session will likely be resolved because plaintiffs' justification for such action is dependent upon the OU2 Decree.  Should plaintiffs continue to advance their claim for the 1:1 Replacement, the Court will entertain defendants' motion for reconsideration.

Accordingly, the Court will deny defendants' motion without prejudice.

### ORDER

For the foregoing reasons, defendants' motion for further relief (Docket No. 23) is **DENIED WITHOUT PREJUDICE.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 29, 2015